Decided 11 December, 1906.

**MORRISON v. OFFICER.**

87 Pac. 896.

WATERS—RIGHT TO SMALL SPRING—STATUTE.

Section 5019, B. & C. Comp., conferring on the owner of land on which spring or seepage water issues the right to use such water, was intended to give such water to such owner, and he may prevent it from passing off his own land.

From Grant: GEORGE E. DAVIS, Judge.

Suit for an injunction, decree for plaintiff and defendant appeals.                              REVERSED.

For appellant there was a brief and an oral argument by *Mr. Errett Hicks.*

For respondent there was a brief over the name of *V. G. Cozad,* with an oral argument by *Mr. William Rufus King.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit by Finlay Morrison against Floyd L. Officer to enjoin interference with the use of water issuing from a spring. The facts are that, on December 5, 1894, the State of Oregon executed to the defendant a deed to the northwest quarter of the southeast quarter of section 36 in township 11, south of range 25 east in Grant County, ever since which he has been the owner in fee thereof. The state, on February 15, 1901, also entered into a contract with the plaintiff for the sale of the northeast quarter of the southeast quarter of that section, township, and range, and five years thereafter he dug a ditch from a swale on the land last described, and conducted to a part thereof water which he intended to use in irrigating a garden. The defendant thereafter cut two ditches on his land from such swale, and diverted all the water therein, whereupon this suit was commenced, resulting in a decree as prayed for in the complaint, and he appeals.

The testimony shows that a perennial spring issues from the defendant's land at a point about 120 yards from the east line thereof, the water from which reaches a point about 150 yards on the plaintiff's premises where it disappears. Though there is a conflict in the testimony, we think the great weight thereof supports the defendant's contention that the water

does not usually appear on the surface, but, issuing from the spring on the side of a hill, it makes its way, without channel or banks, through brush and grass, moistening the ground for a space about 30 feet in width, the distance mentioned, and that where cattle have made tracks in the damp soil, water may be seen, but it does not flow until confined in a ditch. No controversy exists as to the quantity of water which the spring affords, for each party admits that it does not exceed three-fourths of an inch, miners' measurement. The statute regulating the use of water, contains the following clause:

"Provided, that the person upon whose land seepage or spring waters first arise, shall have the right to the use of such waters:" B. & C. Comp. § 5019.

This act was passed February 22, 1893 (Laws 1893, p. 150), when the state was the owner in fee of the lands hereinbefore described. The clause adverted to is, in our opinion, a grant of the exclusive right to the use of the unappropriated water specified to the person upon whose land such water first arises, and was probably a recognition of a practice prevailing in the arid region of the United States, that the title to lands containing water issuing from the sources mentioned had been secured, so that the water might be used for domestic or stock purposes, and that the quantity indicated did not appear to the legislative assembly to be more than was reasonably necessary to supply such use.

When a spring furnishes a stream of water that rises to the surface, the right of appropriation attaches (*Brosnan* v. *Harris*, 39 Or. 148, 65 Pac. 867, 54 L. R. A. 628, 87 Am. St. Rep. 649), but where, as in the case at bar, the admitted quantity is so insignificant that a surface stream is impossible, when spread over the width of ground mentioned, the use of the water belongs to the person upon whose land it first arises. A small part of plaintiff's land was, before the diversion, moistened by water from the spring, and it is possible that such portion might be classed as a "water course," on the theory that the law of gravitation compelled the water to take that direction because of the conformation of the land. The testi-

mony shows, however, that there are no banks to such course on plaintiff's premises, and, unless there is a bank or ripa on his land, he cannot be a riparian proprietor within the meaning of that term. The disposal of the use of water may be controlled by the legislature when its acts designed for that purpose do not violate the fundamental law by trenching upon the rights of property, and, believing that in the present instance the clause of the statute quoted does not invade such provisions, and that the plaintiff secured his contract of purchase with knowledge of the act, the decree is reversed and the suit dismissed.                                    REVERSED.

<div align="center">

Decided 11 December, 1906.